UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

THOMAS M. MULLANEY, ESQ., individually
and on behalf of all others similarly situated,

                Plaintiff,

   -against-                              08 Civ. 7324 (CM)(THK)

DELTA AIR LINES, INC.,

                Defendant.

----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/09

## DECISION AND ORDER DENYING MOTION FOR CLASS CERTIFICATION

McMahon, J.:

      In October 2007, Air France cabin crews went on strike in Paris. For four days, Air France did not fly in and out of Charles de Gaulle (and presumably other French) airports. The strike resulted in the cancellation of numerous flights, including 165 flights that were "code shared" by Air France and the United States carrier Delta Air Lines. Some of the passengers on those 165 cancelled flights – 2,277 of them, to be exact – were customers of Delta; that is, they had booked via, and purchased their tickets through, Delta.

      Plaintiff Thomas M. Mullaney, Esq. – a lawyer who obviously does not have enough client work to keep him busy – was one of those unlucky Delta passengers.

      At the time of the strike, Mullaney and a traveling companion were on their way home (via Paris) from Rome, where they had attended a wedding. The flight on which he was originally booked, and also a second flight on which he was rebooked, were both cancelled because of the strike. After spending three unplanned days in Paris, plaintiff made his way home via American Airlines, so he would not miss a court date (which is certainly commendable). Plaintiff contends that his efforts to obtain a refund for his unused Delta ticket have been stymied, and he brings this action on behalf of himself and a purported class of similarly situated persons who received neither a ride home nor a refund from Delta.

      When this court denied Delta's motion to dismiss the complaint, Mullaney v. Delta Airlines, Inc., No. 08-7324, 2009 WL 1584899 (S.D.N.Y. June 3, 2009), I knew only what was pleaded in that document. Class discovery has fleshed out some of the issues about which I was puzzled.

For example, I was mystified about why plaintiff had gone to such great lengths not to assert the obvious claim for breach of contract – relying instead on theories of "unjust enrichment" and consumer fraud as the bases for recovery. Class discovery has revealed that this is because plaintiff forfeited his breach of contract claim. In accordance with the Rules of Delta's Conditions of Carriage, Delta's liability in the event of a strike is limited to "refund in the original form of payment in accordance with involuntary refund rules any unused portion of the ticket." Rule 90, which governs refunds, provides, "No refunds will be issued on any ticket unless Delta receives a request for the refund and any unused coupons are surrendered to Delta prior to the expiration date of the ticket." In other words, a refund in the event of a force majeur event like a strike requires "surrender of the unused portion of the passenger's ticket." (Conditions of Carriage, Sexton Ex. I, pp. 57, 63-64). Delta's tickets are good for one year from the date of travel; after that, they expire and can no longer be refunded, even if they are surrendered.

Plaintiff testified at his deposition that he never surrendered the unused portion of his ticket to Delta. Indeed, plaintiff does not know what he did with the ticket; he cannot even recall whether he gave it to his travel agent so the agent could submit it to Delta. Delta has never received the ticket. Mullaney thus seems to have failed to comply with the terms of the contract between him and Delta during the ticket's one year shelf life; this bars him from bringing a breach of contract claim.

The court also imagined that if thousands of stranded customers never got refunds for their unused tickets, it would have made a big splash in the press and resulted in numerous lawsuits. Class discovery revealed that there were not thousands of unhappy, and so litigious, Delta/Air France customers, because of the 2,277 potential class members (Delta customers who were affected by the Air France strike), 1,929 were "reticketed or otherwise lifted." This means they either flew on a later flight using their Delta ticket or they used the value of that ticket toward alternative travel instead of obtaining a refund. Another 141 passengers satisfied Delta's refund rules and received refunds for their unused tickets. Delta's records show only 139 of the 2,277 stranded passengers as "open," which means that these passengers had tickets that were "not used" or "not reissued." Delta contends that plaintiff is not in that group of 139, because he was "reticketed," but that is silly; while Mullaney was indeed given a ticket for a later flight, that flight, too, was cancelled. This means that Mullaney's ticket was "not used;" however, the evidence strongly suggests that if he had simply sent the ticket back to Delta he (like 141 other Delta passengers) would have long since received his refund.[1]

Plaintiff has moved for certification of a class consisting of all Delta passengers who were affected by the Air France strike and received neither rebooking (which I interpret as meaning rebooking on a flight that actually took off) nor a refund for the unused portions of their tickets. Plaintiff concedes that he would not be representing a class of thousands; at most the class consists of the 139 "open" passengers and the "missing" 68.

The motion for class certification is denied.

---

[1] Simple subtraction reveals that these numbers do not account for 68 of the original 2,277 stranded passengers. The court has no idea what their status might be.

## Standards for Class Certification

To obtain class certification, a plaintiff must first demonstrate that he satisfies the four requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. If these four criteria are met, the court must determine whether the case meets the ultimate criteria of a class action, which are set out in Federal Rule of Civil Procedure 23(b): whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Moore v. Painewebber, Inc., 306 F. 3d 1247 (2d Cir. 2002).

## The Rule 23(a) Factors

### 1. Numerosity

Plaintiff satisfies the numerosity standards followed in this Circuit, where a number as small as forty persons has been held to be sufficient. Consolidated Rail Corp. v. Town of Hyde Park, 47 F. 3d 473, 483 (2d Cir. 1995). There are at least 139 potential members of the class. The identities of these persons, as well as the 68 others who may be members of the potential class, can readily be ascertained from Delta's records; indeed, Delta already knows who they are, because it has the ticket number and name of every affected passenger.

### 2. Commonality/Typicality

As it is well settled that these two criteria merge in most cases – and certainly in this case – I discuss them jointly.

Commonality exists where common questions of law or fact transcend the entire class, and a proposed class member's claim is "typical" of those of the class when it "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 245 (2d Cir. 2007).

Plaintiff, by defendant's admission, identifies the following as common issues of fact:

1. All class members purchased their tickets on Air France flights from Delta

2. The flights were cancelled during the Air France strike

3. Delta promised to reimburse the airfare after cancellation but did not do so.

Also by defendant's admission, plaintiff and other similarly situated persons raise as a common legal issue: whether plaintiffs have claims under New York's consumer protection laws or for promissory estoppel and if so, whether they are entitled to damages. (The other issues

identified as "common legal issues," such as whether Air France paid Delta for the unused tickets, are actually issues of fact, not of law).

Despite these admissions, defendant contends that the commonality/typicality requirement has not been satisfied, because plaintiff claims that he relied on representations made to him by representatives of Air France, and that renders his claim unique. However, for Rule 23(a) purposes, the issue is whether common questions exist, not whether they predominate or whether they are susceptible to generalized proof. Those issues will be discussed when the court reaches the Rule 23(b) certification factors.

Defendant also argues that plaintiff's claims cannot be typical of those of other class members because Mullaney, by his own admission (made under oath), did not turn his unused ticket in to Delta within a year after he rebooked on American (or at any time). Again, that issue really goes to the predominance of issues that are not susceptible to generalized proof, which is a factor under Rule 23(b) – and which will ultimately prove fatal to Mullaney's quest to turn his personal failure to obtain a refund into an *in terrorem* class action.

### 3. Adequacy of Representation

The final Rule 23(a) factor, adequacy of representation, does not present a high hurdle. The putative class representative must possess the same interest and suffer the same injury as other class members. For a class consisting of persons who did not obtain refunds for tickets sold by Delta on cancelled AirFrance flights during the October 2007 strike, plaintiff is an "adequate" representative – at least as to his consumer fraud claim.[2]

---

[2] It is less clear, however, that plaintiff could adequately represent a class of similarly situated persons. By plaintiff's own admission he did not surrender the unused portion of his Delta ticket as required by the contract between himself and Delta. Although plaintiff's failure may not estop him from asserting an unjust enrichment claim, his failure to comply with the contract might render his interests different from the interests of persons who did not obtain refunds even though they complied with the conditions of carriage; those passengers would likely have a claim sounding in contract, rather than unjust enrichment. See, .e.g, IDT Corp. v. Morgan Stanley Dean Witter & Co.,12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded"). However, since Rule 23(b) dooms plaintiff's quest to maintain this suit as a class action, I will not explore this matter further

## The Rule 23(b) Factors

*1. Predominance of Class over Individual Questions*

Predominance focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). The requirement of predominance is far more demanding than the Rule 23(a) requirement that common questions of law or fact exist. It compels plaintiff to show more than that he and numerous others had the shared experience of cancelled flights during the Air France strike. Rather, the issue of predominance requires that these common issues are, in the main, susceptible to generalized rather than individualized proof.

Here, Mullaney's claim that a class action would be a superior means to adjudicate his and similar claims falls flat.

To establish his own personal claim for fraudulent business practices under New York's General Business Law , plaintiff relies on the contents of a flier that was allegedly made available at Charles DeGaulle Airport, as well as on oral representations made to him by an employee of Air France at the Airport. Plaintiff claims that he was told, orally (by an Air France representative at the airport) and in writing (via the flier), that if he booked his way home on another airline, he would be reimbursed for his unused ticket – a representation on which he relied when he purchased a ticket on American Airlines, and which he asserts was false and fraudulent when made.

The gist of Mullaney's argument in favor of class certification appears to be, essentially, that all passengers who were stranded in Paris had to deal with airline representatives in order to get home, so they must have been told essentially the same thing – probably something that was consistent with what plaintiff read in the flier that he says was available in the airport.

Regrettably, that is not enough to satisfy the predominance requirement.

In Moore v. Painewebber, Inc., 306 F.3d 1247, 1254-55 (2d Cir. 2002), the Second Circuit concluded that liability in a case alleging reliance on representations could not be established by proof of a central, coordinated scheme. Rather, each plaintiff was required to prove that he or she personally received some representation that proximately caused his or her loss. Where a fraudulent practices claim is predicated on uniform misrepresentations made to all members of the class (as when it is predicated on public filings with the SEC, which are made available to all shareholders), the fraudulent practice is susceptible to generalized proof. Where, however, individualized representations were made to individual members of the class – and in this case, individualized representations would have to have been made, since it is unthinkable that all class members dealt with the same Air France employee as plaintiff – class certification is improper, because the plaintiff will need to submit proof of the statements that were made to each class member (or, in the case of the flyer, to establish that each class member received or saw a copy of the flyer). As the Second Circuit put it:

> As these are questions that more likely will be the central disputed
> issues in a fraud action, certification of the class will not negate the
> need for a series of mini-trials where there are material variations
> in the nature of the misrepresentations made.

Moore, *supra.*, 306 F. 3d at 1253.

In this case, individual members of the proposed class spoke with different representatives of Delta and/or Air France concerning the cancelled flights, and so could have been told different things. The record before the court contains not a scintilla of evidence that airline representatives were told to follow a script; and since individual passengers undoubtedly asked a variety of questions, each person's conversation is likely to have been unique in some respect. It is possible that some of these persons saw copies of the flier that plaintiff saw, but others may never have come to Charles de Gaulle Airport at all; Delta offers evidence (which plaintiff does not contradict) that its representatives dealt with numerous individuals over the telephone, not at the airport counters. Plaintiff, of course, did not deal with a Delta representative at all; he spoke to an employee of Air France.

Furthermore, Mullaney himself is subject to a particular defense against his claims: he failed to follow Delta's procedure for obtaining a refund by turning in his unused ticket within one year. Indeed, he has not turned the unused ticket in today. He offers no evidence that any representative of Delta or Air France told him that he could obtain a refund without turning in his ticket, so his failure to tender the ticket (which differentiates him from the 141 customers who *did* turn in their tickets and thereafter received refunds) may well defeat Mullaney's claim without regard to any other facts. As an attorney (and a litigator at that), Mullaney can be presumed to be a relatively sophisticated customer; he may have known,,and probably should have known, that rules of carriage are part of the contract between carriers and their passengers. Certainly, Mullaney was better positioned than most of the stranded passengers to learn what the rules were and to take advantage of them.

In any event, each individual member of the class is going to have to explain what he/she did with his/her ticket, so that the trier of fact can know whether the individual qualifies for a refund. There is no way to "generalize" the proof relating to that subject.

In short, this is not a case where the common questions that admittedly exist are susceptible to generalized proof. As a result, no economies would be realized by treating plaintiff's consumer fraud claim as a class action, and the class action mechanism is not superior to other available methods for fairly and efficiently adjudicating the controversy.

Therefore, no class will be certified.

Mullaney's individual case will proceed to the merits. As he has been deposed already, I will allow no more than 90 days for the parties to complete discovery. If there are discovery disputes, notify the court and I will refer the matter to a magistrate judge for resolution. Summary judgment motions are due by November 1, 2009; responsive papers by November 15 and replies by November 22.

This constitutes the decision and order of the court.

Dated: July 29, 2009

_____
U.S.D.J.

BY ECF TO ALL COUNSEL